1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

9

LORENA MACIAS,

　　　　　Plaintiff,

10

11

　　v.

12

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL
SECURITY,[1]

13

14

　　　　　Defendant.

15

16

No. 1:22-cv-01283-JLT-SKO

**FINDINGS AND RECOMMENDATIONS
RECOMMENDING THAT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT BE
GRANTED, DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT BE
DENIED, AND THE ACTION BE
REMANDED TO THE COMMISSIONER
FOR FURTHER PROCEEDINGS**

**14-DAY DEADLINE**

17

18

19

20

21

22

23

24

25

## I.　　INTRODUCTION

　　　　Plaintiff Lorena Macias ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Doc. 1.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]  For the reasons set forth below, the undersigned recommends the Court grant Plaintiff's motion for summary judgment, deny Defendant's motion for summary judgment, and remand this action to

26

27

28

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

1    the Commissioner for further proceedings.

2    **II.    BACKGROUND**

3        Plaintiff was born on February 16, 1973, and she was 46 years old at her claimed disability

4    onset date of June 5, 2019.  (Administrative Record ("AR") 377).  She has a 12th-grade education

5    and previously worked as an office assistant for the County of Fresno from January 2002 to

6    December 2017.  (AR 377, 379).

7    **A.    Relevant Evidence of Record**[3]

8        **1.    Medical Evidence**

9        Most of Plaintiff's medical evidence relates to (1) her left-eye prosthesis and (2) her

10    history of mental impairments.  Plaintiff suffered an eye trauma in childhood that left her without

11    her left eye.  (*See* AR 829).  During the relevant period, Plaintiff has had various complications

12    related to her eyes, including an infection treated with antibiotics (AR 604-06) and dry eye (AR

13    787).  She often complained of intense pain and fatigue in her right eye.  (*See, e.g.*, AR 787 [April

14    2021], 792 [February 2020], 798 [May 2019], 803 [February 2019], 809 [October 2018]). She has

15    on occasion noted momentary vision loss in her right eye.  (*See, e.g.*, AR 787).  With respect to

16    Plaintiff's mental impairments, she takes various medications for mood management, though she is

17    often anxious or depressed upon examination.  (*See, e.g.*, AR 646).

18        **2.    Opinion Evidence**

19        Jerry Livesay, Ph.D., performed a psychological consultative examination on February 15,

20    2020.  (AR 723).  Plaintiff reported depression, anxiety, vision problems, back problems,

21    dizziness, headaches and obsessive-compulsive disorder ("OCD").  (AR 723).  She reported that

22    she does not cook, shop, do yard work or drive.  (AR 725).  She noted that she watches television

23    but is otherwise in bed because of her headaches.  (AR 725).  Dr. Livesay diagnosed Plaintiff with

24    OCD (moderately severe to severe), depressive disorder due to other medical conditions (moderate

25    with anxious distress), and insomnia disorder (moderately severe to severe), comorbid with

26    depression.  (AR 726).  Dr. Livesay noted Plaintiff's issues were "treatable, and she would likely

27

28    [3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

show measurable improvement over the course of the next year if she remains involved in evidenced-based treatment."  (AR 727).  Dr. Livesay concluded Plaintiff was mildly impaired in performing detailed and complex tasks and interacting with coworkers and the public.  (AR 727).  He also found she was moderately impaired in maintaining regular attendance and completing an average workday/workweek without interruptions from a psychiatric condition, as well as concerning her ability to deal with usual stress encountered in the workplace.  (AR 727).

L. Bobba, M.D., a State agency medical consultant, reviewed Plaintiff's records on March 26, 2020, and concluded she could perform light work that did not require binocular vision or depth perception or moderate exposure to hazards.  (AR 118-20).  On July 3, 2020, state agency medical consultant R. Bitonte, M.D., arrived at the same conclusion.  (AR 138-39).

On May 14, 2020, Pamela Hawkins, Ph.D., a State agency psychological consultant, found Plaintiff had moderate limitations in understanding, remembering or applying information; and concentration, persistence, or maintaining pace.  (AR 116).  Dr. Hawkins also found Plaintiff could perform simple tasks, maintain concentration, and interact with co-workers, but that she would benefit from an environment with limited contact.  (AR 120-22).  On July 7, 2020, R. Paxton, M.D., a State agency psychiatric consultant, found the same.  (AR 135; 139-41).

### 3.    Plaintiff's Testimony[4]

At the hearing, Plaintiff testified that her right eye easily fatigues.  (AR 51-52).  In her previous position with Fresno County, computer work aggravated her eye pain and fatigue, causing headaches and dizziness.  (AR 51-52).  She testified that she struggled to complete an eight-hour workday because of this pain, even though doctors had prescribed her various restrictions (such as resting her eye every 15 minutes).  (AR 51-52).  She now rests her eye for five minutes every 15 to 20 minutes.  (AR 58).  Her eye strain is also reflected in her daily activities.  She testified she cannot watch movies, as her "good eye" would become strained, and she would have blurry, double vision.  (AR 57).  Her eye also blurs after roughly 10 minutes of driving. (AR 62).  She removes her prosthetic eye throughout the day because of its itching and burning, which is a newer complication.  (AR 59).  With regard to her anxiety and depression,

---

[4] Only the testimony relevant to Plaintiff's arguments is summarized here.

1  Plaintiff testified she rarely leaves the house because of her anxiety, and she spends most of her

2  days in bed.  (AR 54, 59).  Her health problems often trigger her anxiety.  (AR 52).   She also

3  struggles to make phone calls or otherwise interact with others.  (AR 52).

4  **B.**     **The ALJ's Decision**

5         Plaintiff submitted her first claim for Title II Disability Insurance Benefits on July 20,

6  2016, alleging a disability onset date of June 1, 2017.  (AR 377).  That claim was denied initially

7  on September 16, 2016, and again upon reconsideration on December 14, 2016.   (AR 81).

8  Plaintiff requested a telephonic hearing before an Administrative Law Jaw (an "ALJ"), and the

9  parties attended a telephonic hearing on February 20, 2019.  (AR 81).  Plaintiff appeared by

10  telephone with an attorney representative (Mr. Jonathan O. Pena), and she amended the alleged

11  onset date to December 1, 2017.  (AR 81).  Plaintiff testified with the assistance of a Spanish

12  interpreter.  (AR 81).  The ALJ denied Plaintiff's application on June 4, 2019.  (AR 90).  Plaintiff,

13  through counsel, sought review of that decision on September 16, 2019 (AR 103), and the Appeals

14  Council dismissed her request for its untimeliness.  (AR 103-04).

15         Plaintiff filed the instant application for disability benefits on October 22, 2019, through

16  Mr. Pena, alleging a disability onset date of June 5, 2019.  (AR 23).  The application was denied

17  initially and upon reconsideration.  (AR 123).  Plaintiff then requested a hearing before an ALJ.

18  (AR 165).  The ALJ held the hearing on May 25, 2021 (AR 23), and Plaintiff testified with the

19  help of a Spanish interpreter.  (AR 23).  Plaintiff's non-attorney representative, Malinda Davies,

20  also appeared with Plaintiff.  (AR 23).

21         In a decision dated September 1, 2021, the ALJ found that Plaintiff was not disabled as

22  defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. §

23  404.1520.  (AR 23-31).  At step one, the ALJ found Plaintiff had not engaged in substantial

24  gainful activity since the alleged onset date of June 5, 2019 (step one).  (AR 26).  At step two, the

25  ALJ found Plaintiff had the following severe impairments: status/post-loss of left eye with

26  prosthetic implant, bilateral dry eye and right eye presbyopia, migraine headache disorder,

27  persistent depressive disorder, generalized anxiety disorder, and obsessive-compulsive disorder

28  (OCD).  (AR 26).  Plaintiff did not have an impairment or combination of impairments that met or

4

1  medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

2  ("the Listings") (step three).  (AR 27-20).

3       The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the

4  assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

5  to step four, we assess your residual functional capacity . . . . We use this residual functional

6  capacity assessment at both step four and step five when we evaluate your claim at these steps.").

7  The ALJ found Plaintiff's conditions limited her to the following RFC:

8       to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot
        climb ladders, ropes or scaffolds and cannot have exposure to hazards such as
9       moving machinery and unprotected heights.  She can understand, remember, and
        carry out short and simple instructions and can occasionally interact with
10      supervisors, coworkers and the public.  She cannot perform fast-paced assembly
        line work, but can meet production requirements that allow her to sustain a flexible
11      and goal oriented pace and can sustain concentration and persistence for periods of
        two hours at a time.  She can adapt to occasional workplace changes.  She can
12      perform work that requires monocular vision but cannot perform work requiring
        accurate depth perception. She will miss one day per month.
13

14  (AR 26).  At steps four and five, the ALJ found that Plaintiff could not perform any past relevant

15  work, as Plaintiff would be limited to unskilled work and her previous positions were semi-skilled.

16  (AR 34).  However, considering the Plaintiff's age, education, work experience and RFC, the ALJ

17  concluded that jobs existed in significant numbers in the national economy that Plaintiff could

18  perform.   (AR 34).   Those jobs included laundry folder (Dictionary of Occupational Titles

19  ("DOT") Number 369.687-018), inspector/hand packager (DOT Number 559.687-074),

20  shipping/receiving weigher (DOT Number 222.387-074), mail clerk (non-postal) (DOT Number

21  209.687-026) and ticket marker (DOT Number 209.587-034).  The ALJ concluded Plaintiff was

22  not disabled under the Social Security Act.  (AR 35-36).

23       Plaintiff, through her attorney, Mr. Pena, requested review of the ALJ's decision but did

24

25  [5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
    setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES
26  II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
    (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
27  individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
    RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and
28  'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1  not offer any additional evidence.  (AR 254-55).  The Appeals Council denied review on August

2  12, 2022, making the September 1, 2021, decision the final decision of the Commissioner.  (AR

3  2); 20 C.F.R. § 404.981.

4                              **III.    LEGAL STANDARDS**

5  **A.    Applicable Law**

6        An individual is considered "disabled" for purposes of disability benefits if he or she is

7  unable "to engage in any substantial gainful activity by reason of any medically determinable

8  physical or mental impairment which can be expected to result in death or which has lasted or can

9  be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

10 However, "[a]n individual shall be determined to be under a disability only if [their] physical or

11 mental impairment or impairments are of such severity that he is not only unable to do [their]

12 previous work but cannot, considering [their] age, education, and work experience, engage in any

13 other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

14       "The Social Security Regulations set out a five-step sequential process for determining

15 whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*,

16 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has

17 provided the following description of the sequential evaluation analysis:

18           In step one, the ALJ determines whether a claimant is currently engaged in
             substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ
19           proceeds to step two and evaluates whether the claimant has a medically severe
             impairment or combination of impairments.  If not, the claimant is not disabled.  If
20           so, the ALJ proceeds to step three and considers whether the impairment or
             combination of impairments meets or equals a listed impairment under 20 C.F.R.
21           pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.
             If not, the ALJ proceeds to step four and assesses whether the claimant is capable
22           of performing [their] past relevant work.  If so, the claimant is not disabled.  If not,
             the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . .
23           to perform any other substantial gainful activity in the national economy.  If so, the
             claimant is not disabled.  If not, the claimant is disabled.
24

25 *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or

26 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*,

27 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

28

                                          6

1   "The claimant carries the initial burden of proving a disability in steps one through four of
2   the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.
3   1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden
4   shifts to the Commissioner in step five to show that the claimant can perform other substantial
5   gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

6   **B.      Scope of Review**

7   "This court may set aside the Commissioner's denial of [social security] benefits [only]
8   when the ALJ's findings are based on legal error or are not supported by substantial evidence in
9   the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is
10  'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might
11  accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
12  (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d
13  1141, 1154 (9th Cir. 2020).

14  "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.
15  Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by
16  inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th
17  Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when
18  the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v.
19  Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one
20  rational interpretation, the court may not substitute its judgment for that of the Commissioner."
21  (citations omitted)).

22  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a
23  specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,
24  143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole,
25  weighing both evidence that supports and evidence that detracts from the [Commissioner's]
26  conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

27  Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."
28  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.' " *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ erred in several respects.  For the reasons explained below, the Court finds that the ALJ erred by failing to provide specific, clear and convincing reasons to discount Plaintiff's subjective complaints, and that error was not harmless. The undersigned recommends the Court remand on that basis.  Because this matter is before the Court for its findings and recommendations, the undersigned will address all of Plaintiff's allegations of error.

**A.    The ALJ Properly Developed the Record**

**1.    Legal Standard**

Claimants carry the burden to prove they are disabled.  20 C.F.R. § 404.1512(a). However, "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12 (2000)).  An ALJ has a responsibility to develop a "complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d).  "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

> The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

*Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).  However, the duty to develop the record further is only triggered when there is ambiguous evidence or the record does not allow for proper evaluation of the evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

1    The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill and

2    unable to protect his or her own interests.  *Id.*   However, if the record includes "specific and

3    sufficient" evidence to evaluate a claim, the record is neither ambiguous nor inadequate.  *Gurin v.*

4    *Saul*, 842 F. App'x 45, 48 (9th Cir. 2021).   An ALJ may discharge their duty by subpoenaing

5    claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or

6    keeping the record open after the hearing to allow supplementation of the record.  *Tonapetyan*,

7    242 F.3d at 1150.

8           **2.     Analysis**

9                **a.     The ALJ Did Not Fail to Obtain Records from Dr. Louie**

10          Plaintiff contends the ALJ did not properly develop the record because the ALJ failed (1)

11   to obtain medical records from Dr. Stanley Louie of Logan Street Medical Group, or (2) to contact

12   Plaintiff or her attorney to advise these records had not been requested or otherwise obtained.[6]

13   (Doc. 14-23 at 19.)   Dr. Louie treated Plaintiff from January 2010 through January 2018 and

14   Plaintiff included him as a treating physician on her application for benefits (AR 292-308), but

15   Plaintiff did not submit any of Dr. Louie's records to the ALJ for consideration.  Plaintiff contends

16   this failure was detrimental to her claim because Dr. Louie was the provider who instructed

17   Plaintiff to rest her eyes every 15 minutes for a total of 3 minutes, and during the ALJ hearing, the

18   Vocational Expert testified people who need to rest their eyes for 3 minutes every 15 minutes

19   would be too off-task to maintain employment.  (AR 71-72).   In the decision, the ALJ concluded

20   "[t]he record is not supportive of the claimant's statement that a provider indicated that she must

21   rest her eyes for every three out of fifteen minutes."  (AR 32).

22          Setting aside Dr. Louie's opinions, Plaintiff has not established the record contained

23   ambiguous evidence or otherwise triggered the ALJ's duty to develop the record further.

24   *Tonapetyan,* 242 F.3d at 1150.  When rejecting Plaintiff's claim that a provider indicated that she

25   must rest her eyes for every 3 out of 15 minutes, the ALJ cited the treatment notes in the record,

26   _____

27   [6] In its response, the Government argues this evidence is not new or material and therefore does not warrant remand
     under sentence six of 42 U.S.C. § 405(g).  However, Plaintiff maintains she "seeks a remand for payment or
     consideration of Dr. Louie's records not because they are new, but rather because the 'ALJ failed to fulfill her duty to

28   fully and fairly develop the record.'"  For this reason, the Court will not address whether the additional records
     discussed here warrant remand under § 405(g).

none of which suggested Plaintiff's eye required a certain amount of rest per hour.  (AR 32).

Plaintiff contends, in a conclusory fashion, that the ALJ should have sought these additional

records because Plaintiff failed to submit the documents herself, despite her long treatment history

with Dr. Louie.  Because it is Plaintiff's burden to present evidence of disability, the mere absence

of a report from a treating or examining physician does not give rise to a duty to develop the

record; instead, that duty is triggered only where there is an inadequacy or ambiguity.  *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009

WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician

did not give rise to a duty to develop the record where record contained opinions of the state

agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A)

("An individual shall not be considered to be under a disability unless [they] furnish[ ] such

medical and other evidence of the existence thereof as the Commissioner of Social Security may

require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are ... disabled[.]").  The

record contained "specific and sufficient" medical evidence to evaluate Plaintiff's claim.

### b.     The ALJ Did Not Fail to Seek Guidance from a Medical Expert

Plaintiff also contends the ALJ failed to develop the record further and seek guidance from

a medical expert.

> [Plaintiff] has a complicated and long medical history, characterized by repeated
> surgeries, chronic pain, fatigue, inability to focus, depression, anxiety, and OCD
> behaviors, which are attributable to her various impairments.  In her assessment,
> the ALJ rejected much of [Plaintiff's] evidence in support of disability, including
> her subjective symptom testimony, and the opinions of her treating and examining
> physicians (i.e., Dr. Villalvazo and Kimberlynn Silva)—crediting only the opinions
> of the agency doctors.  (AR 32-33.)  Despite apparent questions or doubts about
> [Plaintiff's] symptoms and functionality, the ALJ neither scheduled a consultative
> examiner nor requested that a medical expert testify at the hearing.  The ALJ also
> failed to call any of [Plaintiff's] treating providers for clarification on the comorbid
> effects of her conditions, how they impacted her functionality, and what reasonable
> options for treatment existed.  Thus, the ALJ erred by acting as his own medical
> expert instead of utilizing either a consultative examiner or a medical expert to
> provide her with professional guidance in a case that has a complex medical profile.

Doc. 14-23 at 23.

Plaintiff has failed again to specify which ambiguous evidence triggered the ALJ's duty to

develop the record further or otherwise show the record did not allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Without pointing to specific incongruities, Plaintiff's argument fails. *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D. Cal. Feb. 8, 2013) ("[A]n ALJ is not required to order every medical evaluation that could conceivably shed light on a claimant's condition, but rather just those that would resolve ambiguities or inadequacies in the record.") (citing *Mayes*, 276 F.3d at 459-60).

Plaintiff provides only amorphous arguments, such as the ALJ erred by "fail[ing] to call any of [Plaintiff's] treating providers for clarification on the comorbid effects of her conditions" (without demonstrating *which* competing facts needed clarification) and by "acting as his own medical expert instead of utilizing either a consultative examiner or a medical expert to provide her with professional guidance in a case that has a complex medical profile" (without identifying which facts lacked a professional insight). Instead, Plaintiff merely disagrees with the ALJ's conclusion, suggesting the evidence could suggest a different result. This is insufficient to trigger the ALJ's duty to develop the record further. *Dixon v. Saul*, 411 F.Supp.3d 837, 853 (N.D. Cal. Sept. 30, 2019) ("Plaintiff's disagreement with the ALJ's conclusions does not make the record ambiguous or inadequate.").

To the extent Plaintiff contends the ALJ's conclusion must mirror one specific medical opinion, this argument fails because the nature of the ALJ's responsibility is to interpret all the evidence of record, including medical evidence. 20 C.F.R. § 416.920b; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). To suggest otherwise is to render an ALJ superfluous. *Razaqi v. Kijakazi*, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *7 (E.D. Cal. May 9, 2022) ("An ALJ is almost always tasked with performing some independent review the medical evidence that was never considered by one of the state agency's DDS physicians, and thereafter translating

the same into an RFC . . . this is indeed the ALJ's role").

**B.** **The Additional Evidence Submitted by Plaintiff Does Not Warrant a Remand Under § 405(g)**

**1.** **Legal Standard**

Sentence Six of section 405(g) provides, in part, that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." To be material, the new evidence must bear "directly and substantially on the matter in dispute," and the claimant "must additionally demonstrate that there is a 'reasonable probability' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 453. "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Id.* at 463.

"If new information surfaces after the [agency's] final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). "The new evidence, however, must be probative of the claimant's condition as it existed at or before the time of the disability hearing." *Abdullah v. Comm'r of Soc. Sec.*, No. 2:17-CV-2522-DMC, 2019 WL 3731528, at *3 (E.D. Cal. Aug. 8, 2019) (citing *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987)).

**2.** **Analysis**

Plaintiff contends "the Commissioner also did not have evidence that should have been submitted by [Plaintiff's] prior counsel and the ALJ was otherwise required to assist [Plaintiff] in developing," namely Plaintiff's Fresno County Employee Retirement Association's ("FCERA") file or relevant records from her pending ERISA LTD claim. (Doc. 14-23 at 20.) Plaintiff asserts the FCERA file included records that, despite spanning for years before Plaintiff applied for SSDI benefits, "they are evidence that [Plaintiff's] disabling conditions have a long history—even before she stopped working completely—that she made efforts to work despite her conditions, and that despite these efforts, she was unable to perform her duties with any level of reasonable continuity or

1  predictability." (Doc. 14-2 at 21-22.) Plaintiff contends the Court should remand this case

2  considering the new evidence.[7]

3       Plaintiff has not shown that the new evidence is material for purposes of section 405(g).

4  Most of the documents (*see* Docs. 14) pre-date the alleged onset date, some by almost ten years.

5  For instance, the FCERA file contains records of (1) personnel forms from 2000 – 2017 (Doc. 14-

6  10), (2) medical leave forms from May 2007 (Doc. 14-6), (2) and various employment records

7  from 2009 – 2017 (Doc. 14-8). As the Government notes, these records are too dated to be relevant,

8  and it is possible prior counsel made a tactical decision to omit them. *Morales*, 2015 WL 1507844, at

9  *4 ("Although counsel did not submit additional evidence after the hearing even though the ALJ kept

10  the record open for two weeks, he may have made a tactical decision that the additional evidence

11  would not help plaintiff's claim."). Only two of the records from the FCERA file are related to the

12  relevant time period: notes from an examination with David Poulsen, M.D., on April 17, 2019, (Doc.

13  14-15) and notes from an examination with Matthew House, D.O., on September 23, 2019 (Doc. 14-16

14  at 4-5). In both reports, the doctors concluded Plaintiff was not disabled. (Docs. 14-15, 14-16). The

15  Plaintiff has not demonstrated there is a "reasonable probability" that the new evidence would have

16  changed the outcome of the administrative hearing, and this argument fails. *Mayes*, 276 F.3d 453.

17  **C.    The ALJ Improperly Discounted Plaintiff's Subjective Complaints**

18      **1.    Legal Standard**

19       In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

20  must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First,

21  the ALJ must determine whether the claimant has presented objective medical evidence of an

22  underlying impairment that could reasonably be expected to produce the pain or other symptoms

23  alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected

24

25  [7] Plaintiff has included this argument ("The ALJ Failed to Inquire About Other Material Evidence") under a section related to the ALJ's duty to develop the record. However, the argument itself relates to whether new evidence

26  warrants a remand under sentence six of 42 U.S.C. § 405(g). To the extent the Plaintiff argues the ALJ had a duty to develop the record related to these documents, she has not established (1) ambiguous evidence triggered the ALJ's

27  duty to develop the record related to Plaintiff's pension records or (2) that Plaintiff has been prejudiced by the omission of these records. *Tonapetyan,* 242 F.3d at 1150. Again, Plaintiff only puts forth conclusory allegations that

28  the ALJ should have sought these documents without noting what ambiguity triggered the duty to develop the record further.

to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[8]  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

    **2.    Analysis**

Since the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Plaintiff contends the ALJ erred by failing to credit her subjective complaints

---

[8] The Court rejects the Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 17 at 21).

related to: (1) her vision and prosthetic-related eye pain and (2) her anxiety and depression.  (Doc. 14-23 at 23-25).  However, since the ALJ's analysis for both sets of subjective complaints suffers the same flaws, the Court with address Plaintiff's arguments together.

The ALJ erred by failing to specify which of Plaintiff's subjective complaints it found credible and which they did not, and the Court cannot speculate as to how the ALJ determined these statements are undermined by the evidence.  *See Brown-Hunter*, 806 F.3d at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").  In the opinion, the ALJ wrote the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> Regarding the claimant's visual functioning, treatment notes show that the claimant's left eye required removal after a childhood accident occurring at the age of five and that the claimant has had a series of prosthetic implants since, with multiple revision surgeries.  The most recent revision surgeries took place in March 2019.  In July 2019, the claimant's prosthetic had an infection that was treated with antibiotic ointment; she had 20/20 vision in her right eye.  Upon examination in March 2020, her socket was stable and there was no active inflammation; vision in her right eye was 20/25.  She complained of dry eye in April 2021 and reported that her glasses had been broken for a few months; uncorrected vision at this time was 20/40 on the right and she was given eye drops and a new prescription for glasses.  She did not report eye problems to other providers and her right eye was unremarkable on exam . . . .

> The undersigned considered the effects of the claimant's mental impairments, however characterized, and in combination when evaluating the impact of the same on her ability to carry out mental work-related tasks.  Treatment notes show outpatient counseling and medication management but no emergency psychiatric treatment or inpatient hospitalizations.

> The claimant takes Effexor and Lexapro for mood management but treatment notes show less than ideal control over mood given that she was often anxious and/or depressed upon examination.  However, the record does contain findings of normal mood as well.  The claimant reported very short attention span and anxiety about

1    being alone, but the record shows generally normal memory, concentration, and
     social functioning.

2    (AR 30-31) (internal citations omitted).

3        There is no discussion of any of the Plaintiff's testimony or complaints.  "Ultimately, the

4    'clear and convincing' standard requires an ALJ to show [their] work."  *Smart v. Kijakazi*, 53

5    F.4th 489, 498 (9th Cir. 2022).   Without any discussion of Plaintiff's subjective complaints

6    (especially those related to her eye fatigue) from the ALJ, the undersigned cannot meaningfully

7    review the ALJ's conclusions.   At most, the ALJ states Plaintiff reported a short attention span,

8    while the record showed a generally normal memory, concentration and social functioning.

9    However, one stand-alone reference to Plaintiff's subjective complaints is not sufficient for the

10   ALJ to "show their work," as Plaintiff reported several complaints about her anxiety and

11   depression, namely that it prevented her from leaving her house and that she spent most of her

12   days in bed.   (AR 54, 59).  This alone is sufficient to find the Court erred in providing specific,

13   clear and convincing reasons to discount Plaintiff's subjective complaints.

14       What the Court can discern is that the ALJ also erred by discounting the Plaintiff's vision

15   and prosthetic-related eye pain, as well as her anxiety and depression, based solely on the

16   argument that the testimony lacked corroborative medical evidence.   The Court finds this is not a

17   specific, clear and convincing reason to discount Plaintiff's subjective complaints because "the

18   Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after

19   a claimant produces objective medical evidence of an underlying impairment, an ALJ may not

20   reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully

21   corroborate the alleged severity of pain.'"  *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15-cv-01308-

22   SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680).   While

23   the ALJ reviewed Plaintiff's medical history, the ALJ must be specific about what subjective

24   complaints are contradicted by which clinical observations in the record to satisfy the clear and

25   convincing reasons standard—the most demanding in social security cases.   *See Laborin v.*

26   *Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489,

27   494 (9th Cir. 2015)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

28   1999)  (holding  that  an  ALJ's  determination  that  a  claimant  was  not  credible  because  his

16

1   "complaints are 'inconsistent with clinical observations' . . . could satisfy the requirement of a

2   clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not

3   specify what complaints are contradicted by what clinical observations.").

4       The Government's arguments in defense of the ALJ's decision are unpersuasive.   The

5   Government first argues Plaintiff made inconsistent statements regarding her symptoms, but the

6   ALJ did not identify any specific statements by Plaintiff that were contradictory.   The Government

7   highlights that the Plaintiff received conservative treatment, but the ALJ only noted this fact

8   related to Plaintiff's alleged headache disorder, not with respect to her eyes or anxiety and

9   depression.   (AR 31).   The Government also notes her mental impairments were treated with

10  medication, but the ALJ did not suggest Plaintiff's medication and therapy history *undermined*

11  Plaintiff's claims as the treatment notes showed "less than ideal control" over her ailments.   The

12  Government also contends Plaintiff did not require hospitalizations for her mental health, but the Ninth

13  Circuit has held that "[h]ospitalization is not required to show that mental health conditions such as

14  PTSD, OCD, and anxiety are disabling from employment."   *Schiaffino v. Saul*, 799 F. App'x. 473, 476

15  (9th Cir. Jan. 9, 2020).

16      The Court further finds that the ALJ's error was not harmless.   The VE testified that a

17  person who needed to rest her eyes for three minutes every 15 minutes would be too off-task to

18  maintain employment.   (AR 71-72).   Based on this testimony alone, the Court cannot say this error

19  was "inconsequential," because if Plaintiff's subjective complaints are to be credited, she would

20  be presumptively disabled according to the VE's testimony.

21          **3.      The ALJ's Error Warrants Remand for Further Proceedings**

22      Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is

23  "to remand to the agency for additional investigation or explanation."   *Treichler*, 775 F.3d at 1099

24  (citations omitted).   The Ninth Circuit recognized a limited exception to this typical course where

25  courts "remand[] for an award of benefits instead of further proceedings."    *Id.* at 1100–01

26  (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the

27  'credit-as-true' rule").   In determining whether to apply this exception to the "ordinary remand

28  rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2)

"there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted).   As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion."  *Swenson*, 876 F.2d at 689 (citation omitted).

The undersigned finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful.  *See, e.g., McGee o/b/o J.S.F*, 2022 WL 4123980, at *6 (remanding for further proceedings including a de novo hearing and new decision).  The ALJ is, upon remand, to consider all of the relevant medical evidence, including Plaintiff's subjective complaints, in assessing Plaintiff's RFC.  If the ALJ chooses to discount these complaints, the ALJ must provide specific, clear and convincing reasons they have chosen to do so.

**D.     The ALJ Did Not Fail to Consider Whether Plaintiff's Physical and Mental Impairments, In Combination, Met or Equaled a Listing**

**1.     Legal Standard**

At the third step of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *Tackett*, 180 F.3d at 1098.  The Listings, set forth by the Commissioner, "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted) (emphasis in original).  At Step Three of the sequential evaluation, Plaintiff bears the burden of demonstrating that his impairment meets or equals a Listing.  *Burch*, 400 F.3d at 683.

For a claimant's impairment to meet a listing, it must, for a period of 12 continuous months, "meet *all* of the specified medical criteria. An impairment that manifests only some of

1  those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citations

2  omitted) (emphasis in original); *see also Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985); 20

3  C.F.R. §§ 404.1525(d), 416.925(d) ("To meet the requirements of a listing, [the claimant] must

4  have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20

5  C.F.R. pt. 404, subpt. P, app'x. 1 (stating the 12-month rule).  Alternatively, a claimant can qualify

6  for benefits by showing that their unlisted impairment, or combination of impairments, is

7  "equivalent" to a listed impairment by presenting "medical findings equal in severity to all the

8  criteria for the one most similar impairment."  *Sullivan*, 493 U.S. at 531 (citations omitted); see

9  also *Marcia v. Sullivan*, 900 F.2d 172, 175–76 (9th Cir. 1990).

10    **2.    Analysis**

11    Plaintiff contends the ALJ failed to consider whether Plaintiff's physical or mental

12  impairments, when considered together, equaled the criteria listings 12.04 (depressive, bipolar and

13  related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) and "erred as a matter of

14  law in isolating the effects of [Plaintiff's] physical impairments from the effects of her mental

15  impairments when considering whether [Plaintiff's] conditions met or equaled a listed." (Doc. 14-23

16  at 25-26).  As the Government notes, this argument ignores the text of the ALJ's decision, which

17  states, "The severity of the claimant's mental impairments, considered singly and in combination,

18  do not meet or medically equal the criteria of listings 12.04 and 12.06."  (AR 28).  The ALJ then

19  made findings related to the specific listings that Plaintiff named, though Plaintiff does not attempt

20  to undermine these findings.  (AR 28).

21    Plaintiff's sole argument is that the ALJ did not consider her impairments in combination,

22  but the ALJ did just that.  Plaintiff carries the burden to demonstrate her impairments equal a

23  Listing's criteria, and she does not attempt to do so.  No further argument is provided or otherwise

24  discernible.  The Court finds the ALJ did not err in this respect.

25

26  **E.    The ALJ Did Not Otherwise Err at Step Five or Related to the RFC**

27    **1.    Legal Standard**

28    An RFC is "an assessment of an individual's ability to do sustained work-related physical

and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the most that a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs when she provides an incomplete RFC ignoring "significant and probative evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner.  20 C.F.R. § 416.946.   The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions").  The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 2.    Analysis

Plaintiff makes two arguments suggesting the ALJ erred in determining the Plaintiff's RFC: (1) the ALJ relied on selective facts and looked only to objective findings (as opposed to the overall record) and (2) the ALJ did not factor the Plaintiff's non-severe impairments into her RFC.  (Doc. 14-23 at 26-27).  Plaintiff's first argument is a recitation of its argument that the ALJ erred by failing to credit her subjective complaints, which the Court has already addressed.

The Court finds, however, the ALJ did not err by failing to incorporate Plaintiff's nonsevere impairments into her RFC.  Plaintiff puts forth various conclusory allegations, none of which are founded in the ALJ opinion.  For instance, Plaintiff states that "the ALJ did not consider . . . the effect that simply having or experiencing symptoms related to [Plaintiff's] 'non-severe'

impairments had on [Plaintiff's] mental state," (Doc. 14-23 at 26), even though the opinion itself states the ALJ considered all of Plaintiff's symptoms (AR 29).  If Plaintiff takes issue with the quality of the ALJ's reasoning, she does not explain how or why the reasoning is inadequate. Plaintiff has failed to identify any specific limitations the ALJ failed to include, and she does not explain how the RFC ignores "significant and probative evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

**F.      Plaintiff Waived Any Arguments Related to the VE's Job Approximations**

Plaintiff also contends the jobs listed by the VE no longer exist as the DOT describes them, and "because the ALJ found that [Plaintiff] is limited to unskilled work (AR 34), she is necessary disabled from performing the occupations as they are performed in current times."  (Doc. 14-23 at 28-30).  The Government raises two points: (1) the Plaintiff waived this argument by failing to challenge the DOT job descriptions during the administrative hearing or to brief the issue before the Appeals Council, and (2) the O*Net searches Plaintiff provides do not meaningfully rebut the VE's testimony.  (Doc. 17 at 28).  The Court agrees with the Government and finds Plaintiff has waived this argument.

Plaintiff did not raise this issue before the ALJ or the Appeals Council, thereby waiving the argument.  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when that claimant is represented by counsel.").   Therefore, the Court declines to address Plaintiff's argument.

## V.      FINDINGS AND RECOMMENDATIONS

For the reasons explained herein, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (Doc. 14) be GRANTED;

2.      Defendant's cross-motion for summary judgment (Doc. 17) be DENIED;

3.      This matter be REMANDED for further proceedings consistent with this decision; and

4.      The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff

Lorena Macias, and against Defendant Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 4, 2024**                    /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE